## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | MJ No.: 25-MJ-183-GMH |
| | : | |
| v. | : | Criminal No. XX-CR-XXXX |
| | : | |
| ZAVIER R. HILL, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Zavier R. Hill under 18 U.S.C. §§ 3142(f)(1)(E) and 3142(f)(2)(A).

### APPLICABLE LAW

A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). For a detention decision based upon a defendant's dangerousness, the government must prove by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community. *See* 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Furthermore, at a detention hearing, the government may

present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release that will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As set forth more fully below, these factors weigh in favor of detaining the defendant.

## FACTUAL BACKGROUND

On August 26, 2025, at approximately 11:58 p.m., Metropolitan Police Department officers assigned to the DC Safe and Beautiful Task Force were patrolling the area of 5500 9th Street, N.W., Washington, D.C. The defendant Zavier Hill ("HILL") was observed walking in the south alley of 900 Longfellow, N.W. The officers were driving in an unmarked vehicle. HILL was wearing all black clothing, but he also had on a shirt decorated with sequins. HILL began to act suspiciously upon seeing the police and appeared to drop something.

Officer Al-Shrawi observed HILL turn away, walk to the end of the alley and, upon reaching the end of the alley, run in a westerly direction in the 900 block of Longfellow. Officer Al-Shrawi and other officers entered the alley that HILL just left. Officer Al-Shrawi immediately observed a firearm, which was a Ruger LCR .38 Special TP revolver, on the porch of 5512 9th Street, N.W.



The firearm was a revolver with five rounds of ammunition in the cylinder. The firearm was later determined to be fully functional, a barrel less than 12 inches, and capable of discharging a projectile by an explosion while being held with one hand. The officers went on the radio and notified Officer DelBorrell of the presence of the gun and HILL was stopped in the 900 block of Longfellow. HILL was identified as the person seen in the alley. When asked by the police if he had a license to carry a gun, HILL indicated that he did not have a license. HILL was then placed under arrest. While waiting for a transport vehicle, HILL stated, "I know that my sh*t" and "at the end of the day fool, I'm not from here so I'm gonna keep something on me. I am gonna carry me some protection because there's kids out here don't give a fu*k."

HILL was subsequently interviewed after waiving his Miranda rights, and the statement was recorded by videotape. HILL stated that he was aware that he was "wrong" to possession a firearm. He claimed he had the firearm for "protection" from unidentified, dangerous individuals in the neighborhood. Hill went on to explain that his fear was not related to animus directed at him, but rather a generalized fear of people in the neighborhood. Finally. The defendant indicated that he was fully prepared to use the weapon. HILL explained to the agents that he "tossed" the gun when he observed the police. HILL indicated that he found the firearm but had a friend purchase ammunition for him in Virginia. Finally, HILL stated that he had the "little revolver" for about "a year."

## ARGUMENT

**Defendant Should Be Detained Pre-Trial Because He Poses a Danger to the Community and a Substantial Risk of Flight.**

In light of the conduct in this case, the defendant's continued danger to the community, the defendant's lack of lawful employment, the defendant's lack of stable address, the defendant's significant criminal history, the meager ties to the District of Columbia and the penalties the defendant faces for perpetrating this scheme, pretrial detention is necessary to ensure both the safety of the community and that the defendant does not flee to evade prosecution.

### A.    The nature and circumstances of the offense

The nature and circumstances of the offense weigh in favor of detention. According to the defendant's own words, he was walking the streets of the community armed and fully prepared to use a firearm. Put differently, the defendant was a deadly shooting waiting to happen. This is not argument from a prosecutor. This was the clear message from the defendant. The defendant was ready to shoot as he walked around with a gun.

**B.  The weight of the evidence against the defendant**

The weight of the evidence against the defendant is very strong.  The police recovered the firearm immediately after the defendant was seen tossing it and from the exact location where he had been located.  More importantly, the defendant made multiple, spontaneous statements on the scene and during the interview with ATF agents that were incriminating.  For example, in addition to admitting to possessing the firearm, the defendant gave a description of the weapon that matches what was recovered by the police.  There is no doubt that the defendant was walking the streets of the District of Columbia armed with a firearm

**C.  The history and characteristics of the Defendant**

The history and characteristics of the defendant also weigh in favor of detention.

The defendant has no stable residence and is unemployed.  The defendant lives with his girlfriend and, according to the defendant's statement, has for approximately 8 or 9 years.  However, the defendant's mother also lives in Georgia.  In addition to being extensive, the defendant's history of criminality in Georgia goes back as 2003.  Moreover, as demonstrated in the pretrial services report, the defendant has convictions in Georgia, Florida, and the District of Columbia.  Therefore, the defendant has a track record of not only committing crimes but also moving from jurisdiction to jurisdiction.  Considering the charges and the severe penalties he faces if convicted at trial, the defendant has little reason or incentive not to flee and to make himself available for trial.

**D. The nature and seriousness of the danger to any person or the community posed by the person's release**

The fourth factor–the nature and seriousness of the danger to any person or the community posed by the person's release–also weighs in favor of detention.  The defendant's release poses a physical danger to the community.  As the defendant acknowledged to the ATF, he has been

possessed the firearm for nearly a year, and he is prepared to use it. In addition to carrying a loaded weapon, the defendant has dismal, long criminal history. It includes seventeen arrests, according to the pretrial services report, and thirteen convictions for:

2023 – Lewd, Indecent, or Obscene Acts in the District of Columbia

2013 – Possession of a weapon in Florida

2012 – Driving While License is suspended in Georgia

2009 – Driving without a license in Georgia

2008 – Fleeing or attempting to elude a police Officer in Georgia

2007 – Driving while License is suspended in Georgia

2007 – Possession of Marijuana and False Report of a Crime in Georgia

2007 – Driving While License is suspended in Georgia

2006 – Driving While License is suspended or revoked in Georgia

2005 – Suspended License and Invalid License in Georgia

2004 – Theft by Shoplifting in Georgia

2004 – Simple Assault in Georgia (Probation revoked)

2003 – Willful Obstruction of Law Enforcement in Georgia

Therefore, HILL's criminal history spans three jurisdictions and goes back more than twenty years. It includes crimes of obstruction, violence, theft, weapons, and general disregard for the law.

The legislative history of the Bail Reform Act of 1984 makes clear that Congress intended that the "safety of any other person or the community" language in 18 U.S.C. § 3142 was expected to be given a broad construction. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or

witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. *The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."*) (emphasis added). Courts have appropriately construed the statute to find that protection of the community from harm is a valid objective of bail conditions. *See, e.g., United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) (noting support for considering harm in evaluating danger to the community under § 3142 or the Bail Reform Act); *United States v. Schenberger,* 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (holding that "[a] danger to the community does not only include physical harm or violent behavior" and citing the Senate Committee Report language reproduced above); *United States v. LeClercq,* No. 07-80050-cr, 2007 WL 4365601, at *4 (S.D. Fla. Dec. 13, 2007); *United States v. Gentry,* 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (in a fraud and money laundering case, in determining whether pretrial detention was appropriate, the court held that danger to the community under Section 3142(g) "may be assessed in terms other than the use of force or violence . . . [including] economic danger to the community"); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("There can be no question that an economic danger . . . falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."). In light of the totality of the defendant's history and conduct here, he has demonstrated that he poses a serious risk to the safety of the community. Thus, this factor also weighs in favor of detention.

## CONCLUSION

For the reasons noted above, the United States respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The United States also

submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight, and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney
for the District of Columbia


By:    /s/ MICHAEL T. TRUSCOTT
DC Bar Number 1685577
Assistant United States Attorney
601 D Street, N.W., Room 5-1513
Washington, D.C. 20530
(202) 252-7223